**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

FILED
U.S. DIST. COURT
BRUNSWICK DIV.

2005 OCT 28  A 9: 57

CLERK _____
_____ SE OF GA.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | CASE NO.: CR205-34 |
| v. | ) | |
| | ) | |
| MOHAMMED SHAUKAT JAMAL | ) | |
| ASHISKUMAR G. PATEL | ) | |
| HERMANT K. PATEL | ) | |
| YOGESHUMAR PATEL | ) | |
| SANJAYKUMAR A. PATEL | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Sanjaykumar A. Patel ("Patel") is charged with conspiracy, in violation of 18 U.S.C.A. §§ 2 and 371, and use of fraudulent immigration documents, in violation of 18 U.S.C.A. §§ 2 and 1546(a).   Patel filed a Supplemental Motion to Suppress, and the Government responded.  The undersigned conducted an evidentiary hearing on October 25, 2005, at which Agent Scott McCormack, Senior Special Agent for the Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), testified.

## FINDINGS OF FACT

The credible testimony at the evidentiary hearing established the following:

Patel, a native of India, has lived in the United States since 1999.[1]  On August 3, 2005, ICE agents detained and arrested Patel during a sweep of convenience stores.  Patel worked at the convenience stores eleven hours per day, six days per week.  Agents

---

[1] Patel's native language is Gujarati.  At defense counsel's request, the Court provided Patel with an interpreter during the evidentiary hearing.

processed Patel in Savannah, Georgia, for immigration violations.  While in ICE's custody, Agent McCormack asked Patel several opening questions and read him his <u>Miranda</u> rights in English.   Agent McCormack has been employed by ICE and its predecessor, the Immigration and Naturalization Service, since 1991.  Agent McCormack was not familiar with Patel's native village, his educational background, his formal English education, or the constitutional protections afforded citizens of India.  However, he has conducted thousands of interviews with non-English speaking individuals and has extensive experience working with Indian immigrants.  In his experience, most Indians learn English in primary and grade school.

Using a computer generated form from ICE's booking system, Agent McCormack read the standard warning regarding Patel's <u>Miranda</u>[2] rights.  Agent McCormack asked Patel if he understood these rights; Patel answered affirmatively and expressed a willingness to answer Agent McCormack's questions.  Patel answered Agent McCormack's questions in English.  The answers were responsive to the questions.  Agent McCormack determined that Patel understood his questions and an interpreter was unnecessary.  Throughout the interview, Agent McCormack typed Patel's answers.  Agent McCormack asked Patel if he had ever applied for a work permit from immigration; Patel answered, "Yes, I gave $4,000 to a Mexican guy and he filed the application for me.  I didn't fill any of it out.  Dan did, and I just signed it."  When asked if he was denied the ability to sign an amnesty application in the 1980s, Patel stated, "No, I wasn't here, and I only got here about six years ago."  In addition to the questions on the form, Agent McCormack asked Patel if he wanted a hearing

---

[2]  <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed.2d 694 (1966).

2

before an immigration officer when he served Patel his paperwork and notice to appear; Patel indicated that he did not want a hearing.

ICE held Patel in custody for approximately three hours prior to questioning him. Agent McCormack conducted his interview in a holding cell with six other agents and other defendants present.  Agent McCormack did not inquire into Patel's understanding of the United States' justice system nor his understanding of the right to remain silent, but did ask if he had ever been arrested.  Patel signed a printed form containing his <u>Miranda</u> rights and a copy of his answers at the end of the interview.  Patel did not sign a written waiver of his <u>Miranda</u> rights.  Defendant did not testify at the hearing.

## ISSUES

Patel, through counsel, asserts that he speaks "halting English" and could not have made a knowing, intelligent, and voluntary waiver of his <u>Miranda</u> rights. (Def. Br., p. 4.) Defendant contends that "he grew up in India, has a 12th Grade education, and has not previously encountered law enforcement either at home, or in the U.S." <u>Id.</u>  Patel avers that he did not understand his rights, particularly his right to refuse questions by the investigating agent, due to a language barrier and a lack of understanding concerning the United States' justice system.

The Government asserts that Patel made a knowing, intelligent and voluntary waiver. The Government argues that Patel's English comprehension is sufficient to have comprehended his waiver of <u>Miranda</u> rights.

3

## DISCUSSION AND CITATION TO AUTHORITY

I.   **Defendant Patel's Assertion that Custodial Statements Should be Suppressed.**

"No person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. CONST. amend. V.   "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards[3] effective to secure the privilege against self-incrimination."   Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed.2d 694, 707 (1966).   Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."   Id.

An individual in custody may waive his Miranda rights as long as the waiver is "'made voluntarily, knowingly, and intelligently.'"   Moran v. Burbine, 475 U.S. 412, 421, 106 S. Ct. 1135, 1140-41, 89 L. Ed.2d 410, 421   (1986) (quoting Miranda, 384 U.S. at 444).   A defendant's waiver encompasses two distinct aspects. Id. "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception."   Id.; Hart v. Attorney General for the State of Florida, 323 F.3d 884, 892 (11th Cir. 2003).   "Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."   Moran, 475 U.S. at 421, 106 S. Ct. at 1141; Hart, 323 F.3d at 892.   "[L]anguage may in some instances impair an individuals ability to

---

[3] "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Miranda, 384 U.S. at 444, 86 S. Ct. at 1612.

4

waive his rights in a knowing manner."[4] <u>United States v. Boon San Chong</u>, 829 F.2d 1572, 1574 (11th Cir. 1987). However, a court may properly conclude that <u>Miranda</u> rights have been waived, "'[i]f the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension." <u>Moran</u>, 475 U.S. at 421, 106 S. Ct. at 1141 (citations omitted); <u>Hart</u>, 323 F.3d at 892.

There is no evidence to indicate that Patel was pressured or deceived into waiving his <u>Miranda</u> rights. Agent McCormack testified that he followed a scripted interview process used for immigrant booking. He also told Patel that any statements must be made voluntarily. When asked if Patel wanted to answer Agent McCormack's questions, Patel expressed a willingness to do so. Agent McCormack did not interview Patel in an environment that was unusually intimidating or coercive.

Further, the evidence indicates that Patel understood the nature and consequences of his decision. According to Agent McCormack's testimony, Patel told him that he could read and write English. Patel's English competency is bolstered by his approximate six years of residency in the United States and his work in a Savannah, Georgia convenience store. Agent McCormack testified that he did not have difficulty understanding or communicating with Patel. Throughout the interview, Patel never indicated that he did not understand Agent McCormack's questions. In fact, when Agent McCormack asked Patel if

---

[4] Other circuits have elaborated upon the impact of language on <u>Miranda</u> waivers. <u>See, e.g.</u>, <u>Companeria v. Reid</u>, 891 F.2d 1014, 1020 (2nd Cir. 1989) ("[e]ven though [defendant's] proficiency in the English language may have been limited, it did not prevent him from making a knowing and intelligent waiver of his constitutional rights."); <u>United States v. Bernard S.</u>, 795 F.2d 749 (9th Cir. 1986) (finding a sufficient waiver of <u>Miranda</u> rights by a Native American with limited English skills). <u>But see, e.g.</u>, <u>United States v. Heredia-Fernandez</u>, 756 F.2d 1412, 1415 (9th Cir. 1985) ("language difficulties may impair the ability of a person in custody to waive [<u>Miranda</u>] rights in a free and aware manner."); <u>United States v. Short</u>, 790 F.2d 464, 469 (6th Cir. 1986) (holding defendant's language difficulties and lack of understanding regarding the United States criminal justice system rendered her waiver of Miranda rights invalid).

he understood his <u>Miranda</u> rights, he responded affirmatively.  Had Patel not understood Agent McCormack's questions, interpreters were available to assist him, but none were necessary.   Patel's brief answers to several of Agent McCormack's questions were appropriate and did not require further elaboration.  Although Agent McCormack did not have personal knowledge of Patel's former village in India or his formal English education, his thirteen years of experience questioning similarly situated Indian immigrants lends credibility to his testimony.  Based on the totality of circumstances, Patel made a voluntary, knowing, and intelligent, waiver of his <u>Miranda</u> rights. <u>See</u> <u>Moran</u>, 475 U.S. at 421, 106 S. Ct. at 1140-41.  Accordingly, Patel's Supplemental Motion to Suppress should be denied.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendant's Supplemental Motion to Suppress (Doc. No. 75) be **DENIED**.

So **REPORTED** and **RECOMMENDED**, this _28 th_ day of October, 2005.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

6